ORDERED UNSEALED on 10/15/2025 s/ danielmar

SEALED
s/ Daniel Matinez

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KONSTANTIN ANDREYEVICH DOTSENKO,<br>Defendant. | Case No.: 25-mj-03515<br><br><u>COMPLAINT FOR VIOLATION OF</u><br><br>Title 18, U.S.C. Sec. 371 – Conspiracy to Commit Computer Fraud; Title 18 U.S.C. Sec. 1349 – Conspiracy to Commit Wire Fraud |

The undersigned complainant duly sworn states:

At all times relevant to this Complaint:

**INTRODUCTION**

1. Defendant KONSTANTIN ANDREYEVICH DOTSENKO was a resident of Russia.

2. Silent Ransom Group ("SRG") was a ransomware conspiracy that stole data from victims' computers and threatened to publish that data unless the victim paid a ransom. DOTSENKO was a member of SRG.

3. "Data exfiltration" was the unauthorized and intentional transfer of data from a computer or network to an external system. Data exfiltration was typically deployed by cybercriminals who then demanded that the victim pay a ransom to receive the data back, or to prevent further disclosure of the files that the cybercriminals exfiltrated.

4. Company A was a technology company located in San Diego, California.

5. Company B was a consulting company located in Massachusetts.

**COUNT 1**

**(Conspiracy to Commit Computer Fraud)**

**[18 U.S.C. § 371]**

6. Paragraphs 1 to 5 are re-alleged and incorporated herein.

**THE CONSPIRACY**

7. Beginning on a date unknown, but at least since April 2022, and continuing up to and including June 2025, within the Southern District of California and elsewhere, defendant KONSTANTIN ANDREYEVICH DOTSENKO, and others known and unknown, knowingly and intentionally conspired, confederated, and agreed to commit the following offenses against the United States:

a. to intentionally access a computer without authorization, and thereby obtain information from a protected computer, and to commit the offense for purposes of private financial gain, in violation of Title 18, United States Code, Section 1030(a)(2)(C);

b. to knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause loss to one or more persons during a 1-year period aggregating at least $5,000.00 in value, and cause damage affecting 10 or more protected computers during a 1-year period, in violation of Title 18, United States Code, Section 1030(a)(5)(A); and

c. to, with intent to extort from any person any money or other thing of value, transmit in interstate and foreign commerce any

communication containing a demand and request for money and other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion, in violation of Title 18, United States Code, Sections 1030(a)(7)(C).

**MANNER AND MEANS**

8. The objects of the conspiracy were carried out, and were to be carried out, in substance in the following manner:

a. Members of the conspiracy sent unsolicited email communications to various companies purporting to be from online-based services, such as MasterClass or Duolingo.

b. Members of the conspiracy used social engineering techniques first to gain the trust of an employee at the targeted company and thereafter, under fraudulent pretenses, to obtain remote access to the employee's computer using commercially available remote desktop software.

c. Members of the conspiracy thereafter used the remote access to the employee's computer system to exfiltrate data without the knowledge of the employee.

d. Members of the conspiracy, including defendant DOTSENKO, sent emails and/or voicemails to the victim companies demanding that the company contact members of the conspiracy or risk having their stolen data publicly disclosed.

e. When targeted companies refused to pay, members of the conspiracy frequently posted non-public exfiltrated data to public websites accessed and controlled by members of the conspiracy.

//

//

**OVERT ACTS**

9. In furtherance of the conspiracy, and to accomplish its objects, defendant DOTSENKO, together with others known and unknown, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Southern District of California and elsewhere, including but not limited to the following:

a. Overt Act No. 1: On or about April 29, 2022, members of the conspiracy sent emails to Company A purporting to be from MasterClass.

b. Overt Act No. 2: On or after April 29, 2022, members of the conspiracy fraudulently gained unauthorized access to a Company A computer and exfiltrated Company A data.

c. Overt Act No. 3: On or about May 3, 2022, members of the conspiracy sent an email to Company A demanding $5 million to prevent the public disclosure of Company A's stolen data.

d. Overt Act No. 4: On or before April 28, 2022, members of the conspiracy sent phishing emails to Company B.

e. Overt Act No. 5: Between about April 28, 2022 and May 1, 2022, members of the conspiracy fraudulently gained unauthorized access to a Company B computer and exfiltrated Company B data.

f. Overt Act No. 6: On or about May 5, 2022, members of the conspiracy sent an email to Company B demanding $700,000 to prevent the public disclosure of Company B's stolen data.

g. Overt Act No. 7: On or about May 5, 2022, defendant DOTSENKO recorded a voicemail to Company B directing Company B to contact other members of the conspiracy or risk having Company B's stolen date publicly disclosed.

All in violation of Title 18, United States Code, Section 371.

**COUNT 2**

**(Conspiracy to Commit Wire Fraud)**

**[18 U.S.C. § 1349]**

10. Paragraphs 1 to 5 are re-alleged and incorporated herein.

**THE CONSPIRACY**

11. Beginning on a date unknown, but at least since April 2022, and continuing up to and including June 2025, within the Southern District of California and elsewhere, defendant KONSTANTIN ANDREYEVICH DOTSENKO, and others known and unknown, knowingly and intentionally conspired to commit the following offense:

a. wire fraud, in violation of Title 18, United States Code, Section 1343.

**MANNER AND MEANS**

12. The object of the conspiracy was carried out, and was to be carried out, in substance in the following manner:

a. Members of the conspiracy sent unsolicited email communications to various companies falsely claiming to be from online-based services, such as MasterClass or Duolingo.

b. Members of the conspiracy used social engineering techniques first to gain the trust of an employee at the targeted company and thereafter, under fraudulent pretenses, to obtain remote access to the employee's computer using commercially available remote desktop software.

c. Members of the conspiracy thereafter used the remote access to the employee's computer system to exfiltrate data without the knowledge of the employee.

d. Members of the conspiracy, including defendant DOTSENKO, sent emails and/or voicemails to the victim companies demanding

that the company contact members of the conspiracy or risk having their stolen data publicly disclosed.

e. When targeted companies refused to pay, members of the conspiracy frequently posted non-public exfiltrated data to public websites accessed and controlled by members of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

And the complainant states that this complaint is based on the attached Statement of Facts, which is incorporated herein by reference.

Mary E. Stewart, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of June, 2025.

HON. DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

## STATEMENT OF FACTS

I, Mary E. Stewart, being duly sworn, hereby depose and state as follows:

1. This affidavit is in support of a criminal complaint and the issuance of an arrest warrant charging Konstantin Andreyevich Dotsenko with the following criminal offenses: conspiracy to commit computer fraud, in violation of 18 U.S.C. § 371; and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

## I. TRAINING AND EXPERIENCE

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for over 4 years. I am currently assigned to a cyber squad in the San Diego Field Office. As a member of this squad, I investigate cybercrimes, such as computer intrusions (commonly referred to as hacking), distributed denial of service attacks, internet fraud, and the use of malicious code. I have received training in conducting such cyber-based investigations, including the FBI's cyber career path training, as well as training covering, among other things, hacker techniques, incident responses, computer forensics, and cyber security. Based on this training and experience, I am familiar with the manner in which persons engaged in cybercrimes operate; the manner in which cybercrimes are perpetrated; techniques, methods and practices commonly used by persons engaged in cybercrime activity; and indicia of cybercrime activity. This training and experience form the basis for opinions I express below.

## II. STATEMENT OF PROBABLE CAUSE

### A. Background

3. Silent Ransom Group ("SRG") was a ransomware conspiracy that stole data from victims' computers and threatened to publish that data

unless the victim paid a ransom. SRG used social engineering techniques to gain unauthorized access to victim computers. SRG typically gained access by sending phishing emails purporting to come from popular on-line subscription services (for example, Masterclass and Duolingo). The potential victim was informed that their subscription to the service was about to be renewed and that they should call a number if they wanted to cancel the subscription. While on the call, the victim was tricked into joining a Zoho Assist session or a similar remote access tool. Zoho Assist is a legitimate business tool that enables subscribers to remotely manage devices, among other uses. Once a SRG victim unwittingly initiated a Zoho Assist session with SRG, SRG used that access to exfiltrate data from the victim's computer system. Unlike other ransomware groups, SRG exfiltrated data but did not encrypt the victim's computer systems. Rather, SRG threatened to publicly disclose the stolen data or sell it to the victim's competitors if ransom wasn't paid. To date, SRG has attacked more than 100 victims resulting in a loss of more the $10 million.

4. Dotsenko is a 25-year-old citizen of Russia from Vorkuta, Russia, who is believed to live in Moscow. Dotsenko was a "negotiator" for SRG who recorded voice messages extorting SRG's victims.

**B. Company A Intrusion**

5. Company A is a San Diego, California-based technology company. Starting sometime in or about April 2022, hundreds of Company A employees received "phishing" emails in their Company A email addresses.

6. The language in the phishing emails varied somewhat between each recipient but generally discussed the recipient's "MasterClass"

subscription and encouraged the recipient to call a phone number to "update" their MasterClass account.

7. On or about April 29, 2022, a Company A employee received a phishing email from josuesweepstake23@aol.com. The employee followed the instructions in the phishing email and called the phone number. On the call, the employee was directed to visit a website. The employee was using a Company A-issued laptop and navigated to a malicious webpage.

8. Once on the malicious webpage, the employee unwittingly initiated a Zoho Assist session with the threat actor. Zoho Assist is a legitimate business tool that enables subscribers to remotely manage devices, among other uses. In this case, the Zoho Assist session enabled the threat actor to remotely access Company A's computer system and exfiltrate data.

9. The employee's Company A-issued laptop was secured with "Endpoint Detection and Response (EDR)" software that monitored the laptop for malicious activity. After visiting the malicious webpage, Company A's third-party computer network security monitoring service AdvIntel detected malicious activity from the employee's laptop via EDR.

10. AdvIntel detected files on the Company A employee's laptop associated with exploiting Atera and Zoho. AdvIntel attributed the exploit files to a threat group based in Eastern Europe that AdvIntel identified as "Silent Ransom."

11. On April 29, 2022, AdvIntel detected unauthorized "rclone" command executions on the employee's laptop. Rclone is disallowed on Company A's network and therefore triggered an alert with AdvIntel.

12. "Rclone," short for "Remote Clone," is a command executed at a command line prompt that manages files on cloud servers. In this instance, rclone was used to copy files from the victim computer to a computer server controlled by SRG.

13. On May 3, 2022, a number of Company A employees received the following email from uqannalaurauq7133@gmail.com:

> Hello,
>
> We are the ones that hacked [Company A] corporation computers and took more than 2GB of the critical data including financial documents, employees personal info and lawsuits against [Company X]. We know that you are already aware of the attack and you have reached out to law enforcement, not really smart, cause if you are not going to communicate with us, the data will be posted or sold. We can easily put this data in the DarkWeb or even sell it to anybody who will show an interest, but luckily we are businessmans.
>
> In order for us to delete this data you have to pay an amount of $5,000,000. If this amount is paid we can guarantee you the complete deletion of the data from our servers, privacy of our communication and security advice with an explanation of how we get this information.
>
> If you are not going to pay the amount, firstly we are going to call Intel and tell them that the details of the trial has been stolen and make sure to let them know that it was [Company A] mistake, after that we will post all the data on DarkWeb and other sources and make sure that the reputation of [Company A] corporation will be destroyed. We will also make sure that those patents that we took from [Company A] are on the web as well
>
> You need to pass this info to your bosses and reach out to us immediately.
>
> All further communication can be done through this email address.
>
> If you are going to try to waste our time and not communicate with us the data will be posted in 5 days.
>
> Here is some examples of the files:Case trial against [Company X] (attached 5,6)
>
> Confidential info regarding patents (4,7)
>
> Little bit of what we got (10% 8,9)
>
> You got 5 days to respond to this email.

14. The email attached screen shots of files stolen from the employee's laptop computer.

15. A federal search warrant was served on Remote Computing Service Provider 1 ("Service Provider 1") on May 6, 2022, for records and content related to the server to which Company A data was exfiltrated (¶ 12). The server contained about 2.3 GB of data belonging to Company A.

16. Company A verified the stolen files contained Company A intellectual property.

17. On or about the weekend of May 14-15, 2022, Company A paid the attackers $2.5 million in ransom money to prevent the release or sale of their data.

18. AdvIntel provided Company A with a summary of the incident and identified Silent Ransom Group as the perpetrators.

19. Records obtained from Zoho Assist identified IP address 176.110.140.11 as the IP address that was used to register and sign into the Zoho account that sent the session link to the Company A employee. On January 2, 2022, the same IP address 176.110.140.11 was logged four times as the IP address used to update the Apple account associated with konstantin4499@mail.ru, which is registered in the name Konstantin Dotsenko.

**C. Company B Attack**

20. Company B is a consulting firm headquartered in Massachusetts.

21. Similar to the phishing campaign that targeted Company A, Company B was also the target of a phishing campaign by SRG. Multiple employees received the phishing emails, including the Director of Finance and Administration, who fell for the phishing email. The threat

actor used multiple remote access tools, including Splashtop and Atera, which agents believe were used in conjunction with other tools to exfiltrate data from the Company B employee's device.

22. Between approximately April 28, 2022 and May 1, 2022, data from the Company B Director of Finance and Administration's device was exfiltrated to a server controlled by SRG, which is the same server to which Company A's data was exfiltrated.

23. On approximately May 5, 2022, Company B received a ransom note via email titled "Stolen information of [Company B]. Very Important!" The senders of the email claimed responsibility for the Company B attack and claimed to have taken over 156GB of data. The email set a $700,000 ransom demand to guarantee the deletion of the stolen Company B data from their servers. Company B eventually paid about $100,000 in Bitcoin to prevent the publication of their data.

24. Following the ransom email, Company B received voicemails from a threat actor who identified himself as "Sam Sparks" and said he represented "Silent Ransom Organization." "Sam Sparks," who spoke with an eastern European accent, claimed they took 156GB of data and urged Company B to communicate with them via email.

25. Defendant Konstantin Dotsenko formerly lived in the United States. Specifically, Dotsenko, from Vorkuta, Russia, was listed on the men's basketball team roster for Texas-based Tarleton State University. Notably, the roster also listed a Sam Sparks, from Santa Fe, New Mexico.

26. A postgame interview of Konstantin Dotsenko from approximately January 25, 2021, is available on Soundcloud.com at https://soundcloud.com/tarletonsid/Konstantin-dotsenko?in=tarletonsid/sets/Tarleton-mens-basketball-1-25-21-post-

game-interviews. This audio clip was compared to the voicemail left for Company B. Upon comparison, the investigating agents concluded that the voices matched and that Konstantin Dotsenko was the caller who left the voicemail for Company B.

27. Additional voicemails left following SRG attacks were reviewed, and agents concluded that the voices on 15 of those messages also matched Dotsenko. The most recent voicemail that matched Dotsenko was left on January 31, 2023, following an SRG intrusion into Company C, a law firm in Denver, Colorado. Additional voicemails obtained following SRG intrusions were made by another individual who frequently gave their name as "Jack." The SRG caller "Jack" has yet to be identified by agents.

**D. IP Address 176.110.140.11 and the Company D Attack**

28. As discussed above, IP address 176.110.140.11 was used in connection with the Company A attack and was used to update the Apple account belong to Dotsenko. As discussed below, this IP address was also used in the SRG attack on Company D.

29. Company D is a 450-lawyer firm with eight offices. In July 2022, SRG launched a Duolingo-themed phishing email to Company D. A Company D employee who received the phishing email called the number provided and was instructed to download Zoho Assist. The employee complied, and SRG successfully exfiltrated data. On July 8, 2022, Company D paid $500,000 ransom (negotiated down from an initial $3 million demand) to crypto wallet bc1qxuwckez2kc2vqez9vpzdqh5ar8cf0qtu6qe94t to prevent the public disclosure of their data.

30. Through cryptocurrency tracing, agents identified wallets that received funds from Company D's ransom payment, including wallets

held by the exchange Changelly's API partner, Ledger. In response to process, Changelly provided information that IP address 176.110.140.11 was used to access the cryptocurrency wallets that received Company D ransom funds.

**E. Additional Evidence Concerning Dotsenko**

31. Through follow-on investigation, agents identified a phone number associated with Dotsenko, which he had provided as part of his U.S. student visa application. That number was associated with a WhatsApp account. Data from a pen register/trap and trace device installed on Dotsenko's WhatsApp account showed that he was in frequent contact with Individual-1. Individual-1 was identified by investigators as an individual involved in ransomware attacks. Individual-1 is a professional basketball player in Russia and formerly played college basketball in the United States. From about early May to early June 2025, Dotsenko and Individual-1 were in contact about 2,500 times via WhatsApp.

32. Ransomware actors typically administer a leak site, that is, a website that is used to publish the data of victims who do not pay the ransom. SRG actors identified ullamcorpem.com as their leak site to victims. Specifically, when negotiating with victims, SRG actors referred the victims to that site as a cautionary tale. The website provided URLs to access the leaked data of three victim companies.

33. CentralOps.net is a website that provides online network tools for investigating domains and IP addresses. A search on CentralOps.net showed that SRG's leak site was updated on March 11, 2023. Agents conducted a search of IP addresses accessed by the Apple account associated with konstantin4499@mail.ru (the Apple account is owned by Konstantin Dotsenko) and learned that IP address 85.174.207.169

was used to update the Apple account multiple times between March 9, 2023 and March 12, 2023, including multiple times on March 11, 2023. IP address 85.174.207.169 was also identified as accessing the ullamcorpem.com leak website two times on March 11, 2023. Based on my training and experience, I believe Dotsenko used IP address 85.174.207.169 on March 11, 2023 to update his Apple account and to access the leak site.

**F. Evidence of Conspiracy**

34. Based on my training and experience and my involvement in this investigation, I know that ransomware groups, including SRG, are run like conventional businesses that employ various people to fill different roles. While some individuals will perform multiple roles, the operation of a ransomware group requires people to research prospective victims, gain access to victims' computers, negotiate ransom payments, launder proceeds, and recruit participants, among other jobs.

35. As discussed above, agents identified IP address 176.110.140.11 as being involved in the attacks on Company A and Company D. IP address 176.110.140.11 was also used by SRG co-conspirator Individual-2. Individual-2 has been identified as an associate of Dotsenko. Based on my knowledge of this investigation, I learned that Individual-2 was a leader in the SRG conspiracy. Between February and April 2020, Individual-2 used IP address 176.110.140.11 to log onto his accounts on a criminal botnet that allowed Individual-2 to route his internet traffic through other people's devices and thereby hide his identity.

36. Individual-2 is also linked to SRG's attack on Company E, a law firm based in Philadelphia, Pennsylvania. On March 11, 2023, a

person connecting through IP address 5.139.174.43 navigated to Zoominfo.com and searched for Company E. It is common for ransomware attackers to research their victims on opensource platforms like Zoominfo to set a ransom demand based on the victim's revenue and therefore perceived ability to pay. In this case, IP address 5.139.174.43 belonged to OJSC Rostelecom Macroregional Branch South, a state-owned ISP located in Krasnador, Russia, where Individual-2 (and Dotsenko) lived. Records from Apple showed that Individual-2 logged into his Apple account, which includes his full name and is associated with a Google mail account, via IP address 5.139.174.43 a total of 65 times between March 9, 2023 and March 10, 2023. Individual-2 is also the subscriber for the Google account. Based on Individual-2's use of IP address 5.139.174.43, agents concluded that he queried Company E on Zoominfo.

37. As noted, Dotsenko and co-conspirator Individual-2 both used IP address 176.110.140.11, an IP address that was used in the ransomware attack on Company A and used in connection with moving the ransom payment from Company D. Dotsenko's and Individual-2's use of IP addresses continues to overlap. Between January 2, 2022 - April 25, 2023, and September 13, 2024 - January 27, 2025, there were 54 unique overlapping IP addresses between Dotsenko and Individual-2. Of the 54 IP addresses, three were true IP addresses while the remaining IP addresses were VPNs or Proxy IPs. The last overlapping IP address was identified between December 29, 2024 - January 1, 2025, and was believed to be the IP address from Dotsenko's residence due to the number and duration of logins. Based on this data, I believe that Dotsenko and Individual-2 continue to collaborate on ransomware attacks.

38. In addition, as mentioned, agents identified two voices that were leaving voicemails to the various victim companies. While one of those was identified as Dotsenko's, the other, who identified himself as "Jack," is believed to be a co-conspirator.

**III. CONCLUSION**

39. Based on the foregoing there is probable cause to conclude that defendant Konstantin Andreyevich Dotsenko committed the offense charged in the criminal complaint, that is, (i) conspiracy to commit computer fraud, in violation of 18 U.S.C. § 371; and (ii) conspiracy to commit wire fraud.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Mary E. Stewart

Mary E. Stewart, Special Agent
Federal Bureau of Investigation