ADAM GORDON
United States Attorney
Shane P. Harrigan
Jonathan I. Shapiro
Assistant United States Attorney
California State Bar Nos. 115757/268954
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8225
Email: jonathan.shapiro@usdoj.gov

Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KONSTANTIN ANDREYEVICH DOTSENKO,<br><br>Defendant. | Case No. 25cr2859-BJC<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Adam Gordon, United States Attorney, and Shane P. Harrigan and Jonathan I. Shapiro, Assistant United States Attorneys, and Defendant KONSTANTIN ANDREYEVICH DOTSENKO, with the advice and consent of Reuven L. Cohen and Brittany L. Lane, counsel for Defendant, as follows:

//

//

//

//

//

//

# I

## THE PLEA

Defendant agrees to plead guilty to Counts 2 and 4 of the Indictment charging Defendant with:

Count 2

On or about April 29, 2022, within the Southern District of California, and elsewhere, defendant KONSTANTIN ANDREYEVICH DOTSENKO, aka "Lincoln," aka "K.D.," aka "Sam Sparks," did knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer; to wit, defendant DOTSENKO, knowingly caused the transmission of a program, information, code, and command for use in the data exfiltration from a computer used by Company A, and aided and abetted the same, and as a result of such conduct, caused damage without authorization to computers used by Company A. The offense caused loss resulting from a related course of conduct affecting one or more protected computers aggregating at least $5,000 in value, and damage affecting 10 or more protected computers during a one-year period.

All in violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B), and 2.

Count 4

Beginning on a date unknown to the grand jury, but at least since April 2022, and continuing up to and including June 2025, within the Southern District of California, and elsewhere, defendant KONSTANTIN ANDREYEVICH DOTSENKO, aka "Lincoln," aka "K.D.," aka "Sam Sparks," and others known and unknown to the grand jury, knowingly and intentionally conspired to commit the following offense:

a. wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

In addition, the attached financial addendum shall govern restitution and forfeiture in this case.

## II

## NATURE OF THE OFFENSE

### A. ELEMENTS EXPLAINED

Defendant understands that the offenses to which Defendant is pleading guilty have the following elements:

Damage to a Protected Computer (Count 2)

1. The defendant knowingly caused the transmission of a program, information, code, or command;
2. The defendant intentionally caused damage, without authorization, to a protected computer; and
3. Loss during any 1-year period resulting from a related course of conduct aggregating at least $5,000 in value, or damage affecting 10 or more protected computers during any 1-year period.

Aiding and Abetting

1. Someone else committed the crime charged;
2. The defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the crime charged;
3. The defendant acted with the intent to facilitate the crime charged; and
4. The defendant acted before the crime was completed.

Conspiracy to Commit Wire Fraud (Count 4)

Conspiracy

1. The defendant agreed with another person to do something which federal law prohibits;
2. The defendant knew the unlawful purpose of the agreement and willfully joined the conspiracy; and
3. At some time during the existence of the conspiracy, one of the members knowingly committed an overt act in furtherance.

Wire Fraud

1. The defendant knowingly participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and
4. The defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

## B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

### (1) Damage to a Protected Computer

1. On or about April 29, 2022, within the Southern District of California, and elsewhere, Defendant did knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer; to wit, Defendant knowingly caused the transmission of a program, information, code, and command for use in the exfiltration of data from a computer used by Company A, and/or aided and abetted the same, and as a result of such conduct, caused damage without authorization to computers used by Company A. The offense caused loss resulting from a related course of conduct affecting one or more protected computers aggregating at least $5,000 in value, and damage affecting 10 or more protected computers during a one-year period.
2. Specifically, on or about April 29, 2022, an employee of Company A, located in San Diego, California, received a phishing email from Defendant's coconspirators, located in Russia, purporting to be from MasterClass. The email falsely stated that the employee's free trial was

about to expire and that the employee would soon be charged. The employee followed the instructions in the phishing email and called the phone number. On the call, the employee was directed to visit a website. The employee was using a Company A-issued laptop and navigated to the website as directed. Once on the website, the employee followed additional fraudulent instructions and unwittingly granted Defendant's coconspirators remote access to Company A's computer, enabling Defendant's coconspirators to exfiltrate about 2.1 GB of data from Company A's computer.

3. On or about May 3, 2022, Defendant and his coconspirators sent an email to Company A claiming responsibility for the hack and threatening to sell or publish Company A's stolen data, including patents, unless Company A paid a $5 million ransom.
4. Thereafter, Defendant left three voice messages for Company A threatening to publish Company A's data and demanding that Company A communicate with Defendant and his coconspirators. Defendant admitted that he sent the ransom email and said, "We're the ones who hacked your computer and took more than 2 gigabytes of private data from [Company A.] . . .. You need to start to communicate with us."
5. Defendant left similar voice messages in connection with Defendant's and his coconspirators' ransomware attacks of at least 10 victims.
6. Following negotiations with Defendant and his coconspirators, Company A paid $2.5 million to prevent the publication or sale of its stolen data.

(2) Conspiracy to Commit Wire Fraud

1. Beginning on a date unknown, but at least since April 2022, and continuing up to and including June 2025, within the Southern District of California, and elsewhere, Defendant agreed with other individuals

to knowingly participate in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

2. Defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose.

3. Members of the conspiracy sent unsolicited email communications to various companies purporting to be from online-based services, such as MasterClass or Duolingo.

4. Members of the conspiracy used social engineering techniques first to gain the trust of an employee at the targeted company and thereafter, under fraudulent pretenses, to obtain remote access to the employee's computer using commercially available remote desktop software.

5. Members of the conspiracy thereafter used the remote access to the employee's computer system to exfiltrate data, including trade secrets of the companies, without the knowledge of the employee.

6. Members of the conspiracy, including Defendant, sent emails and/or voicemails to the victim companies demanding that the companies contact members of the conspiracy or risk having their stolen data publicly disclosed.

7. Upon contacting a victim company via email and/or telephone, members of the conspiracy demanded a substantial monetary payment from the company or risk having their stolen data publicly disclosed.

8. When targeted companies refused to pay, members of the conspiracy posted non-public exfiltrated data to public websites accessed and controlled by members of the conspiracy.

9. For example, on or about April 29, 2022, an employee of Company A, located in San Diego, California, received a phishing email from Defendant's coconspirators, located in Russia, purporting to be from

MasterClass. The email falsely stated that the employee's free trial was about to expire and that the employee would soon be charged. The employee followed the instructions in the phishing email and called the phone number. On the call, the employee was directed to visit a website. The employee was using a Company A-issued laptop and navigated to the website as directed. Once on the website, the employee followed additional fraudulent instructions and unwittingly granted to Defendant's coconspirators remote access to Company A's computer, enabling Defendant's coconspirators to exfiltrate about 2.1 GB of data from Company A's computer, including trade secrets of Company A, as defined in 18 U.S.C. § 1839(3).

(3) Loss

1. The parties agree that the offenses to which Defendant is pleading guilty affected over 159 victim companies and resulted in losses of more than $25 million and less than $65 million.

## III

## PENALTIES

Defendant understands that the crimes to which defendant is pleading guilty carry the following penalties:

A. Damage to a Protected Computer

1. a maximum prison of 10 years;
2. the greater of (i) a maximum fine of $250,000, or (ii) the greater of twice the gross gain or twice the gross loss;
3. a mandatory special assessment of $100;
4. a maximum term of supervised release of 3 years;
5. possible ineligibility for certain federal benefits; and

6. forfeiture of all property which was involved in the offense and all property traceable to such property.

B. Conspiracy to Commit Wire Fraud

1. a maximum prison term of 20 years;
2. the greater of (i) a maximum fine of $250,000, or (ii) the greater of twice the gross gain or twice the gross loss;
3. a mandatory special assessment of $100;
4. a maximum term of supervised release of 3 years;
5. possible ineligibility for certain federal benefits; and
6. forfeiture of all property which was involved in the offense and all property traceable to such property.

## IV

## DEFENDANT'S WAIVER OF TRIAL RIGHTS

Defendant understands that this guilty plea waives the right to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII
## APPLICABILITY OF SENTENCING GUIDELINES

Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory, and the Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. Defendant understands further that the sentence cannot be determined until a presentence report has been prepared by the U.S. Probation Office and defense counsel and the Government have had an opportunity to review and challenge the presentence report. Nothing in this plea agreement shall be construed as limiting the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

//

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Defendant understands that the sentence is within the sole discretion of the sentencing judge. The Government has not made and will not make any representation as to what sentence Defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise, the recommendation made by the Government is not binding on the Court, and it is uncertain at this time what Defendant's sentence will be. Defendant also has been advised and understands that if the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant nevertheless has no right to withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

### A. SENTENCING GUIDELINE CALCULATIONS[1]

Although the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures:

| | | |
|---|---|---|
| 1. | Base Offense Level [USSG §§ 2B1.1(a)(1) | +7 |
| 2. | Loss exceeds $25 million [USSG 2B1.1(b)(1)(L)] | +22 |
| 3. | Ten or more victims [USSG § 2B1.1(b)(2)(A)(i)] | +2 |
| 4. | Misappropriation of a trade secret [USSG §2B1.1(b)(14)(A)] | +2 |

//

[1] The parties agree that, should the Guidelines in effect at the time of sentencing differ from those presently in effect, and should those Guidelines result in an equal or lower guidelines range than would have applied under the present version, the Guidelines in effect at the time of sentencing shall apply, which may result in adjustments to the above-stated Base Offense Level, Specific Offense Characteristics, and Adjustments.

| | | |
|---|---|---|
| 5. | Substantial part of the fraudulent scheme committed outside the U.S. or offense involved sophisticated means [USSG § 3B1.2(b)(10)(B) or (C)] | +2 |
| 6. | Convicted of 1030(a)(5)(A) [USSG § 2B1.1(b)(19)(A)(ii)] | +4 |
| 7. | Zero -point Offender [USSG § 4C1.1] | -2 |
| 8. | Adjustment: Acceptance of Responsibility [USSG § 3E1.1] | -3 |
| 9. | 18 U.S.C. § 3553(a) variance for Defendant's early agreement to waive extradition from Lithuania, his voluntary consent to search his cell phone and waiver of appeal and collateral attack equivalent to | -2 |
| | **Resulting Adjusted Offense Level** | **32** |

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2. Falsely denies prior criminal conduct or convictions;

3. Is untruthful with the Government, the Court or probation officer; or

4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government may oppose any additional downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category.

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The parties agree that the Government will recommend that Defendant be sentenced within the advisory guideline range as calculated by the Government pursuant to this agreement.

G. SPECIAL ASSESSMENT/FINE

1. Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. Fine

The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

H. SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant agrees that he will not later seek to reduce or terminate early the term of supervised release until he has served at least 2/3 of his term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

//

//

//

## XI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are 1) Defendant may appeal a custodial sentence above the high end of the guideline range recommended by the Government at sentencing (if USSG § 5G1.1(b) applies, the high end of the range will be the statutorily required mandatory minimum sentence), and 2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant acknowledges, understands and agrees that if Defendant violates or fails to perform any of Defendant's obligations under this agreement, such violation or failure to perform may constitute a material breach of this agreement.

Defendant acknowledges, understands and agrees further that the following non-exhaustive list of conduct by Defendant unquestionably constitutes a material breach of this plea agreement:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any lawful court order related to this case;

6. Appealing or collaterally attacking the sentence or conviction in violation of Section XI of this plea agreement; or

7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

In the event of Defendant's material breach of this plea agreement, Defendant will not be able to enforce any of its provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled as of the date of this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, Defendant agrees that in the event of Defendant's material breach of this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a material breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and/or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

//

//

//



Def. Initials KD

XIII

ENTIRE AGREEMENT

This plea agreement together with the attached forfeiture addendum embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

IV

MODIFICATION OF AGREEMENT MUST BE IN WRITING

No modification of this plea agreement shall be effective unless in writing signed by all parties.

XV

DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## XVI

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and his counsel did not advise him about what to say in this regard.

ADAM GORDON
United States Attorney

August 12, 2026
DATED

SHANE P. HARRIGAN
JONATHAN I. SHAPIRO
Assistant U.S. Attorneys

August 11, 2026
DATED

REUVEN L. COHEN
BRITTANY L. LANE
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

08/10/2026
DATED

KONSTANTIN DOTSENKO
Defendant